DONALD J. WINDER (#3519)
JOHN W. HOLT (#5720)
WINDER & COUNSEL, P.C.
460 South 400 East
Salt Lake City, Utah  84111
Telephone: (801) 322-2222
Facsimile:  (801) 322-2282

*Attorneys for Plaintiff DCWV Acquisition Corporation*

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DCWV ACQUISITION CORPORATION<br><br>Plaintiff,<br><br>vs.<br><br>JEREMY SMITH, and CRAFT SMITH, LLC, a California Limited Liability Company<br><br>Defendants. | **COMPLAINT**<br>**(Jury Demanded)**<br><br><br>Case No.:  2:14-cv-00350<br><br>Judge:   Bruce S. Jenkins |

Plaintiff DCWV Acquisition Corporation ("DCWV"), by and through its counsel, hereby complains and alleges against Defendants Jeremy Smith ("Smith") and Craft Smith, LLC ("Craft Smith"), as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1. DCWV is a Delaware corporation, registered in the state of Utah, with its principal place of business in Utah County, Utah.

2. Upon information and belief, Smith resides in California.

1

3. Upon information and belief, Craft Smith is a California limited liability company owned, operated and managed by Smith.

4. This Court has personal jurisdiction over the Defendants named in this matter.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) inasmuch as there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

6. Venue is properly laid in this Court pursuant to the provisions of 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

7. DCWV is a designer and supplier of craft and hobby supplies to major retail outlets throughout the United States.

8. DCWV, in connection with conducting its business, develops, creates and holds confidential and proprietary information, including technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware, configuration information, marketing, finances and other business information.

9. DCWV takes efforts to protect and preserve its business, including its confidential and proprietary information.

10. DCWV employed Smith in an executive position as vice president of sales for DCWV. Smith executed an Employment Agreement ("the Smith Agreement") on or about

August 22, 2006.  A copy of the Smith Employment Agreement is attached hereto as Exhibit "A."

11. The Smith Agreement contains a covenant not to compete, prohibiting Smith from competing with DCWV for a period of no less than six months following termination of the Smith Agreement.  DCWV has the option to extend the covenant not to compete for an additional six months.

12. During the non-compete period, Smith also agreed not to directly or indirectly:

> (i) solicit or request any employee of or consultant with [DCWV] or its subsidiaries, employed or retained by [DCWV] or its subsidiaries, to (A) leave the employ or cease consulting with [DCWV] or its subsidiaries, or (B) join the employ of or being consulting with any Person; (ii) solicit, request, suggest or otherwise abet any Person to employ any employee of or consultant to [DCWV] or its subsidiaries; or (iii) employ, assist in employing or otherwise associate with any employee, officer or agent of or consultant to [DCWV] or its subsidiaries.

13. Smith is prohibited under the Smith Agreement from soliciting or attempting to solicit, any of DCWV's customers for a period of two years following his termination.

14. Pursuant to the Smith Agreement, Smith is prohibited from divulging, disclosing, using or making accessible to any other person, firm, partnership, corporation or other entity any "Confidential Information," defined as "non-public information concerning [DCWV's] financial data, strategic business plans, product development (or other proprietary product data), customer information, discoveries, practices, processes, methods, marketing plans, and other material non-public, proprietary and confidential information of [DCWV], that, in any case, is not otherwise generally available to the public…."

15. On or about September 16, 2013, Jim Scheyer became DCWV's CEO. With that transition, Smith pledged to Scheyer that he would continue working for DCWV long term.

16. Upon information and belief, Smith had no intention of remaining with DCWV and had already been planning to start a competing business, using confidential information to which he had access as a DCWV employee, and using the help of other DCWV's employees, including but not limited to Tai Anderson ("Anderson"), director of trend, Danelle Larsen ("Larsen"), director of design, Mary Ann Tadlock ("Tadlock"), category manager, and Chuck Gibson ("Gibson"), sales manager.

17. While still employed with DCWV, Smith registered Craft Smith in California on or about September 19, 2013, as well as the name "Craftsmithco.com." Upon information and belief, Craft Smith has engaged, and continues to engage, in business that competes with DCWV.

18. Without any notice or warning, Smith resigned from DCWV on December 20, 2013. At that time, DCWV reminded Smith of his restrictions against competing with DCWV and soliciting DCWV's customers and employees.

19. Prior to his quitting, Smith purposely entered into a difficult-to-fulfill commitment with a customer, Michaels, because of an extremely tight shipment window, jeopardizing DCWV's relationship with Michaels. As a result, DCWV eventually ended up having to cover $28,000 on freight charges for a direct shipment to Michaels.

20. Telephone records reveal Smith continued to have contact with other DCWV employees after he quit.

21. Upon information and belief, Smith contacted DCWV employees for the purpose of soliciting them and obtaining DCWV's confidential and proprietary information in order to compete with DCWV.

22. Upon information and belief, shortly after Smith quit and at Smith's urging, Anderson and Larsen gave their notices of resignation from DCWV.

23. Upon information and belief, Smith solicited DCWV employees to provide information to him about DCWV.

24. Upon information and belief, sometime prior to January 12, 2014, Smith had solicited Gibson and hired him for his new business. Smith, at the time, retained DCWV property and confidential information, including a computer, customer lists and pricing information.

25. A Craft and Hobby Association convention ("the CHA") was scheduled for January, 2014. Smith attended the CHA with Larsen, Tadlock and Gibson.

26. Upon information and belief, Smith, Tadlock, Larsen, Gibson, and other employees attended various social and business meetings, including meetings with representatives of Michaels, one of DCWV's customers.

27. On or about January 17, 2014, Tadlock sent an e-mail to Smith and others, including a representative of Michaels, sharing information about DCWV. Tadlock inadvertently also sent this e-mail to DCWV.

28. On or about January 17, 2014, DCWV learned that Smith and Craft Smith had hired Larsen.

5

29. On or about January 17, 2014, DCWV learned that Smith had hired Anderson to work for Smith and Craft Smith (Craftsmithso.com) creating products for one of DCWV's customers, contrary to the restrictions in the Anderson Agreement.

30. On or about January 18, 2014, Tadlock, without DCWV's knowledge or consent, forwarded DCWV planogram sketches to Smith.

31. On or about February 3, 2014, Tadlock gave DCWV notice that she was quitting. Tadlock was relieved of her job responsibilities the following day. DCWV later learned that Tadlock had retained her category manager position in relation to Michaels and that Smith was paying her. Tadlock subsequently became a sales manager for Smith and his competing business.

32. Upon learning about Smith's activities in competing with DCWV, and soliciting and hiring DCWV's employees, DCWV sent him a cease and desist letter on or about February 20, 2014. However, Smith has failed to comply with the demands of that letter and disputes he is under any restrictions.

**FIRST CAUSE OF ACTION**
**(Temporary, Preliminary and Permanent Injunctive Relief)**

33. DCWV hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

34. Defendants continue to engage in acts and omissions to the detriment of DCWV and its business, and in violation of contractual and common law obligations and duties.

35. DCWV will suffer irreparable harm if Defendants are not enjoined from their actions of disclosing and using DCWV's confidential information, soliciting DCWV's customers, soliciting DCWV's employees, and otherwise competing unfairly with DCWV.

36. The threatened injury to DCWV outweighs any damage Defendants might sustain if they are enjoined.

37. Any injunction awarded in this case against Defendants will not be adverse to the public interest.

38. There is a substantial likelihood DCWV will prevail on the merits of the claims asserted in this Complaint.

39. Pending the entry of final judgment in this matter, DCWV is entitled to a temporary restraining order/preliminary injunction against Defendants to prevent them from engaging in further acts or omissions to DCWV's detriment, and requiring Defendants to abide by their contractual and common law duties and obligations.

40. DCWV is entitled to an order permanently enjoining Defendants from competing with DCWV, improperly using and disclosing DCWV's confidential information, soliciting DCWV's customers, soliciting DCWV's employees, and requiring Smith and Craft Smith to abide by their respective contractual and common law duties and obligations.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

41. DCWV hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

42. The Smith Agreement is a valid and enforceable contract.

43. Pursuant to the Smith Agreement, Smith is contractually prohibited from competing with DCWV, soliciting DCWV's customers, soliciting DCWV's employees, and disclosing DCWV's confidential information.

44. Smith is in material breach of his contractual obligation with DCWV by, among other things, doing the following:

   a. Starting and operating a business that competes with DCWV.

   b. Using DCWV's confidential information to start a competing business and to compete with DCWV.

   c. Soliciting and hiring DCWV employees, including, at a minimum, Anderson, Larsen, Gibson and Tadlock.

   d. Soliciting DCWV's customers.

   e. Disclosing to third-parties DCWV's confidential information.

   f. Conspiring with other DCWV employees to start a business that competes with DCWV.

   g. Soliciting from other DCWV employees confidential information about DCWV.

      h.     Interfering with DCWV's business relationships with its customers.

      i.     Other acts and omissions as may be revealed through discovery.

45. As direct and proximate results of Smith's breaches, DCWV has been damaged, in substantial amounts as will be established at trial. DCWV also risks further damages, including the disclosure of confidential information, the loss of customers and the loss of employees.

46. DCWV is entitled to an award of attorneys' fees as provided in the Smith Agreement as a result of this action to enforce DCWV's rights.

## THIRD CAUSE OF ACTION
### (Breach of Implied Contract of Good Faith and Fair Dealing)

47. DCWV hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

48. Implied in every contract is a covenant requiring contracting parties to treat each other fairly and in good faith.

49. Smith is subject to the implied covenant of good faith and fair dealing as a result of his contract with DCWV.

50. Smith breached his implied covenant of good faith and fair dealing by engaging in the actions as described in this Complaint.

51. Smith's breaches of the implied covenant of good faith and fair dealing have caused DCWV substantial damages, as will be established at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duties and Duties of Loyalty)

52. DCWV hereby incorporates by this reference the foregoing paragraphs of the Complaint as if fully set forth herein.

53. At all relevant times, Smith was an executive and vice present of DCWV, and as such, he owed fiduciary duties and duties of loyalty to DCWV.

54. During his employment with DCWV, and through his actions as described in this Complaint, Smith violated the fiduciary duties and duties of loyalty he owed to DCWV.

55. As direct and proximate results of Smith's acts and omissions in violation of his fiduciary duties and duties of loyalty, DCWV has suffered substantial damages and Defendants have unlawfully profited, as will be established at trial.

## FIFTH CAUSE OF ACTION
### (Intentional Interference with Economic Relations)

56. DCWV hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

57. At the time of Defendants' acts and omissions as alleged herein, DCWV had business relationships with third-parties with an expectancy or likelihood of future economic benefit of DCWV.

58. Defendants knew or should have known of the existence of DCWV's expectancy from its business relationships.

59. Defendants, for an improper purpose or by improper means, interfered with DCWV's existing or potential economic relationships.

60. As direct and proximate results of Defendants' interference, DCWV has suffered substantial damages, as will be established at trial.

## SIXTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets)

61. DCWV hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

62. DCWV's confidential and proprietary information constitute formulae, patterns, compilations, programs, devices, methods, techniques or processes that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

63. Defendants, using improper means, misappropriated DCWV's trade secrets, as defined under UTAH CODE ANN., § 13-24-2(2).

64. As a result of Defendants' misappropriation, DCWV is entitled to an award of damages as provided under UTAH CODE ANN., § 13-24-4(1).

65. To the extent Defendants' misappropriation of DCWV's trade secrets was willful and malicious, DCWV is entitled to an award of exemplary damages pursuant to UTAH CODE ANN., § 13-24-4, and attorneys' fees pursuant to UTAH CODE ANN., § 13-24-5.

## SEVENTH CAUSE OF ACTION
### (Conversion)

66. DCWV hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

67. At all relevant times, DCWV retained ownership over its property, including computers, customer information, artwork, pricing information and other confidential information.

68. Defendants knowingly, dishonestly and intentionally took and retained DCWV's property, including property used to compete against DCWV.

69. Defendants continue to retain property they took from DCWV.

70. As direct and proximate results of Defendants' conversion, DCWV has been damaged, in substantial amounts, as will be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, DCWV prays against Defendants as follows:

1. For temporary, preliminary and permanent injunctive relief against Defendants.

2. For damages against Smith for his breaches of contract.

3. For damages against Smith for his breaches of the implied covenant of good faith and fair dealing.

4. For damages against Smith for his breaches of fiduciary duties and duties of loyalty owed to DCWV.

5. For damages against Defendants for their intentional interference with DCWV's

economic relationships.

6.     For damages, including exemplary damages, against Defendants for their misappropriations of DCWV's trade secrets.

7.     For damages against Defendants for their conversion of DCWV's property.

8.     For an award of costs and attorneys' fees, as provided by contract and statute.

9.     For pre- and post-judgment interest as allowed by law.

10.    For other and further relief as the Court may deem just and proper in this matter.

## JURY DEMAND

DCWV's damages a jury trial of all factual issues in this matter.

DATED this 7th day of May, 2014.


                                        WINDER & COUNSEL, P.C.


                                        _____/s/ John W. Holt_____
                                        Donald J. Winder
                                        John W. Holt
                                        *Attorneys for Plaintiff*